IN THE UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

WHAM-O HOLDING, LTD. and
INTERSPORT CORP. d/b/a WHAM-O,

    Plaintiffs,

v.

THE PARTNERSHIPS AND UNINCORPORATED
ASSOCIATIONS IDENTIFIED ON SCHEDULE "A",

    Defendants.

Case No.: 1:18-cv-7299

**COMPLAINT**

Plaintiffs, Wham-O Holding, Ltd. and InterSport Corp. d/b/a WHAM-O ("WHAM-O" or "Plaintiffs"), by its undersigned counsel, hereby complains of the Partnerships and Unincorporated Associations identified on Schedule A attached hereto (collectively, "Defendants"), and for their Complaint hereby alleges as follows:

**JURISDICTION AND VENUE**

1. This Court has original subject matter jurisdiction over the claims in this action pursuant to the provisions of the Lanham Act, 15 U.S.C. § 1051 et seq. 28 U.S.C. § 1338(a)–(b) and 28 U.S.C. § 1331. This Court has jurisdiction over the claims in this action that arise under the laws of the State of Illinois pursuant to 28 U.S.C. § 1367(a), because the state law claims are so related to the federal claims that they form part of the same case or controversy and derive from a common nucleus of operative facts.

2. Venue is proper in this Court pursuant to 28 U.S.C. § 1391, and this Court may properly exercise personal jurisdiction over Defendants since each of the Defendants directly targets consumers in the United States, including Illinois, through at least the fully interactive

commercial Internet stores operating under the Defendant Domain Names and/or the Online Marketplace Accounts identified in Schedule A attached hereto (collectively, the "Defendant Internet Stores"). Specifically, Defendants are reaching out to do business with Illinois residents by operating one or more commercial, interactive Internet Stores through which Illinois residents can purchase products bearing counterfeit versions of Plaintiffs' trademarks. Each of the Defendants has targeted sales from Illinois residents by operating online stores that offer shipping to the United States, including Illinois, accept payment in U.S. dollars and, on information and belief, has sold products bearing counterfeit versions of Plaintiffs' federally registered trademark to residents of Illinois. Each of the Defendants is committing tortious acts in Illinois, is engaging in interstate commerce, and has wrongfully caused Plaintiffs substantial injury in the State of Illinois.

## INTRODUCTION

3. This action has been filed by WHAM-O to combat online counterfeiters who trade upon WHAM-O's reputation and goodwill by selling and/or offering for sale products in connection with WHAM-O's FRISBEE trademarks, which are covered by U.S. Trademark Registration Nos. 4,046,202; 970,089 and 679,186. The Registrations are valid, subsisting, and in full force and effect. A true and correct copy of the federal trademark registration certificates for the marks are attached hereto as Exhibit 1.

4. The Defendants create numerous Defendant Internet Stores and design them to appear to be selling genuine Plaintiffs products, while selling inferior imitations of Plaintiffs' products. The Defendant Internet Stores share unique identifiers, such as design elements and similarities of the counterfeit products offered for sale, establishing a logical relationship between them and suggesting that Defendants' illegal operations arise out of the same transaction,

occurrence, or series of transactions or occurrences. Defendants attempt to avoid liability by going to great lengths to conceal both their identities and the full scope and interworking of their illegal counterfeiting operation. Plaintiffs are forced to file this action to combat Defendants' counterfeiting of Plaintiffs' registered trademarks, as well as to protect unknowing consumers from purchasing unauthorized FRISBEE products over the Internet. Plaintiffs have been and continue to be irreparably damaged through consumer confusion, dilution, and tarnishment of their valuable trademarks as a result of Defendants' actions and seeks injunctive and monetary relief.

5. This Court has personal jurisdiction over each Defendant, in that each Defendant conducts significant business in Illinois and in this Judicial District, and the acts and events giving rise to this lawsuit of which each Defendant stands accused were undertaken in Illinois and in this Judicial District. In addition, each Defendant has offered to sell and ship infringing products into this Judicial District.

## THE PLAINTIFFS

6. Plaintiff, Wham-O Holding, Ltd., is a foreign company having its principal place of business in Hong Kong at 212-220 Lockhart Road, B2,11/F., Loyong Court Commercial Bldg., Wan Chai, Hong Kong and Plaintiff, InterSport Corp. d/b/a WHAM-O InterSport Corp. d/b/a WHAM-O acts as the Sales, Marketing, Design and Distribution arm of Wham-O products for the Americas and has a place of business at 966 Sandhill Avenue, Carson, California 90746.

7. WHAM-O is associated with FRISBEE, a classic outdoor toys and equipment brand, for over sixty years. WHAM-O or its predecessors have exclusively used these FRISBEE marks, and toys solder under the FRISBEE marks are among the most popular ever sold, with sales in hundreds of millions of units.

8. WHAM-O has long engaged in the business of manufacturing and marketing in interstate commerce toys called "flying discs" sold under the FRISBEE trademarks. FRISBEE is a federally-registered trademark of WHAM-O, U.S. Trademark Registration Nos. 4,046,202; 970,089 and 679,186. The Registrations are valid, subsisting, and in full force and effect. A true and correct copy of the federal trademark registration certificates for the marks are attached hereto as Exhibit 1.

9. Since the introduction to the public of the FRISBEE flying disc in 1957, Wham-O has continuously used the FRISBEE Marks, which have long served to identify and distinguish Wham-O's flying discs from those of others. Wham-O has sold over 100 million flying discs under the FRISBEE Marks, and Wham-O has continuously promoted the mark on its packaging, creating a direct consumer association between the FRISBEE Marks and Wham-O as source.

10. WHAM-O is the official source of FRISBEE products:



https://wham-o.com/

11. The FRISBEE trademarks are distinctive and identify the merchandise as goods from WHAM-O. The registrations for the FRISBEE trademarks constitute prima facie evidence of their validity and of WHAM-O's exclusive right to use the FRISBEE trademarks pursuant to 15 U.S.C. § 1057 (b).

12. The FRISBEE trademarks have been continuously used and never abandoned.

13. WHAM-O has expended substantial time, money, and other resources in developing, advertising, and otherwise promoting the FRISBEE trademarks. As a result, products bearing the FRISBEE trademarks are widely recognized and exclusively associated by consumers, the public, and the trade as being products sourced from WHAM-O.

14. In addition to continuous use of the FRISBEE Marks, Wham-O actively policies the improper use of its mark by others. Wham-O has enforced its rights against third-parties to protect its valuable trademarks.

## THE DEFENDANTS

15. Defendants are individuals and business entities who, upon information and belief, reside in the People's Republic of China or other foreign jurisdictions. Defendants conduct business throughout the United States, including within Illinois and in this Judicial District, through the operation of the fully interactive commercial websites and online marketplaces operating under the Defendant Internet Stores. Each Defendant targets the United States, including Illinois, and has offered to sell and, on information and belief, has sold and continues to sell infringing and/or counterfeit FRISBEE products to consumers within the United States, including Illinois and in this Judicial District.

## THE DEFENDANTS' UNLAWFUL CONDUCT

16. The success of the FRISBEE brand has resulted in significant infringement and

counterfeiting. WHAM-O has identified numerous domain names linked to fully interactive websites and marketplace listings on platforms such as WISH, iOffer and Aliexpress, including the Defendant Internet Stores, which were offering for sale, selling, and importing unauthorized FRISBEE products to consumers in this Judicial District and throughout the United States. Defendants have persisted in creating the Defendant Internet Stores. Internet websites like the Defendant Internet Stores are estimated to receive tens of millions of visits per year and to generate over $135 billion in annual online sales. According to an intellectual property rights seizures statistics report issued by Homeland Security, the manufacturer's suggested retail price (MSRP) of goods seized by the U.S. government in fiscal year 2013 was over $1.74 billion, up from $1.26 billion in 2012. Internet websites like the Defendant Internet Stores are also estimated to contribute to tens of thousands of lost jobs for legitimate businesses and broader economic damages such as lost tax revenue every year.

17. Upon information and belief, Defendants facilitate sales by designing the Defendant Internet Stores so that they appear to unknowing consumers to be authorized online retailers, outlet stores, or wholesalers selling genuine FRISBEE products. Many of the Defendant Internet Stores look sophisticated and accept payment in U.S. dollars via credit cards, Western Union and PayPal. Defendant Internet Stores often include images and design elements that make it very difficult for consumers to distinguish such counterfeit sites from an authorized website. Defendants further perpetuate the illusion of legitimacy by offering "live 24/7" customer service and using indicia of authenticity and security that consumers have come to associate with authorized retailers, including the McAfee® Security, VeriSign®, Visa®, MasterCard®, and PayPal® logos. WHAM-O has not licensed or authorized Defendants to use

its FRISBEE trademarks, and none of the Defendants are authorized retailers of genuine FRISBEE products.

18. Upon information and belief, Defendants also deceive unknowing consumers by using the FRISBEE trademarks without authorization within the content, text, and/or meta tags of their websites to attract various search engines crawling the Internet looking for websites relevant to consumer searches for FRISBEE products. Additionally, upon information and belief, Defendants use other unauthorized search engine optimization (SEO) tactics and social media spamming so that the Defendant Internet Stores listings show up at or near the top of relevant search results and misdirect consumers searching for genuine FRISBEE products. Further, Defendants utilize similar illegitimate SEO tactics to propel new domain names to the top of search results after others are shut down. As such, WHAM-O also seeks to disable Defendant Domain Names owned by Defendants that are the means by which the Defendants could continue to sell counterfeit FRISBEE products.

19. Defendants often go to great lengths to conceal their identities by often using multiple fictitious names and addresses to register and operate their massive network of Defendant Internet Stores. Other Defendant Domain Names often use privacy services that conceal the owners' identity and contact information. Upon information and belief, Defendants regularly create new websites and online marketplace accounts on various platforms using the identities listed in Schedule A to the Complaint, as well as other unknown fictitious names and addresses. Such Defendant Internet Store registration patterns are one of many common tactics used by the Defendants to conceal their identities, the full scope and interworking of their massive counterfeiting operation, and to avoid being shut down.

20. There are similarities among the Defendant Internet Stores. For example, some of

the Defendant websites have similar layouts. In addition, the counterfeit FRISBEE products for sale in the Defendant Internet Stores bear similarities and indicia of being related to one another, suggesting that the counterfeit FRISBEE products were manufactured by and come from a common source and that, upon information and belief, Defendants are interrelated. The Defendant Internet Stores also include other notable common features, including use of the same domain name registration patterns, unique shopping cart platforms, accepted payment methods, check-out methods, meta data, illegitimate SEO tactics, HTML user-defined variables, domain redirection, lack of contact information, identically or similarly priced items and volume sales discounts, similar hosting services, similar name servers, and the use of the same text and images.

21. In addition to operating under multiple fictitious names, Defendants in this case and defendants in other similar cases against online counterfeiters use a variety of other common tactics to evade enforcement efforts. For example, counterfeiters like Defendants will often register new domain names or online marketplace accounts under new aliases once they receive notice of a lawsuit. Counterfeiters also often move website hosting to rogue servers located outside the United States once notice of a lawsuit is received. Rogue servers are notorious for ignoring take down demands sent by brand owners. Counterfeiters also typically ship products in small quantities via international mail to minimize detection by U.S. Customs and Border Protection. A 2012 U.S. Customs and Border Protection report on seizure statistics indicated that the Internet has fueled "explosive growth" in the number of small packages of counterfeit goods shipped through the mail and express carriers.

22. Further, counterfeiters such as Defendants typically operate multiple credit card merchant accounts and PayPal accounts behind layers of payment gateways so that they can continue operation in spite of Plaintiffs' enforcement efforts. Upon information and belief,

Defendants maintain off-shore bank accounts and regularly move funds from their PayPal accounts to off-shore bank accounts outside the jurisdiction of this Court. Indeed, analysis of PayPal transaction logs from previous similar cases indicates that offshore counterfeiters regularly move funds from U.S.-based PayPal accounts to China-based bank accounts outside the jurisdiction of this Court.

23. Defendants, without any authorization or license from WHAM-O, have knowingly and willfully used and continue to use the FRISBEE trademarks in connection with the advertisement, distribution, offering for sale, and sale of counterfeit FRISBEE products into the United States and Illinois over the Internet. Each Defendant Internet Store offers shipping to the United States, including Illinois, and, on information and belief, each Defendant has offered to sell counterfeit FRISBEE products into the United States, including Illinois.

24. Defendants' use of the FRISBEE trademarks in connection with the advertising, distribution, offering for sale, and sale of counterfeit FRISBEE products, including the sale of counterfeit FRISBEE products into Illinois, is likely to cause and has caused confusion, mistake, and deception by and among consumers and is irreparably harming WHAM-O.

## COUNT I
## TRADEMARK INFRINGEMENT AND COUNTERFEITING (15 U.S.C. § 1114)

25. WHAM-O repeats and incorporates by reference herein its allegations contained in the above paragraphs of this Complaint.

26. This is a trademark infringement action against Defendants based on their unauthorized use in commerce of counterfeit imitations of the registered FRISBEE trademarks in connection with the sale, offering for sale, distribution, and/or advertising of infringing goods. The FRISBEE trademarks are highly distinctive marks. Consumers have come to expect the highest quality from WHAM-O's products provided under the FRISBEE trademarks.

27. Defendants have sold, offered to sell, marketed, distributed, and advertised, and are still selling, offering to sell, marketing, distributing, and advertising products in connection with the FRISBEE trademarks without WHAM-O's permission.

28. WHAM-O holds the exclusive rights to the FRISBEE trademarks. The United States Registrations for the FRISBEE trademarks (Exhibit 1) are in full force and effect. Upon information and belief, Defendants have knowledge of WHAM-O's rights in the FRISBEE trademarks, and are willfully infringing and intentionally using counterfeits of the FRISBEE trademarks. Defendants' willful, intentional and unauthorized use of the FRISBEE trademarks is likely to cause and is causing confusion, mistake, and deception as to the origin and quality of the counterfeit goods among the general public.

29. Defendants' activities constitute willful trademark infringement and counterfeiting under Section 32 of the Lanham Act, 15 U.S.C. § 1114.

30. WHAM-O has no adequate remedy at law, and if Defendants' actions are not enjoined, WHAM-O will continue to suffer irreparable harm to its reputation and the goodwill of its well-known FRISBEE trademarks.

31. The injuries and damages sustained by WHAM-O has been directly and proximately caused by Defendants' wrongful reproduction, use, advertisement, promotion, offering to sell, and sale of counterfeit FRISBEE products.

## COUNT II
## FALSE DESIGNATION OF ORIGIN (15 U.S.C. § 1125(a))

32. WHAM-O repeats and incorporates by reference herein its allegations contained in the above paragraphs of this Complaint.

33. Defendants' promotion, marketing, offering for sale, and sale of counterfeit FRISBEE products has created and is creating a likelihood of confusion, mistake, and deception

among the general public as to the affiliation, connection, or association with WHAM-O or the origin, sponsorship, or approval of Defendants' counterfeit FRISBEE products by WHAM-O.

34. By using the FRISBEE trademarks in connection with the sale of counterfeit FRISBEE products, Defendants create a false designation of origin and a misleading representation of fact as to the origin and sponsorship of the counterfeit FRISBEE products.

35. Defendants' false designation of origin and misrepresentation of fact as to the origin and/or sponsorship of the counterfeit FRISBEE products to the general public is a willful violation of Section 43 of the Lanham Act, 15 U.S.C. § 1125.

36. WHAM-O has no adequate remedy at law and, if Defendants' actions are not enjoined, WHAM-O will continue to suffer irreparable harm to its reputation and the goodwill of its brand.

## COUNT III
## VIOLATION OF ILLINOIS UNIFORM DECEPTIVE TRADE PRACTICES ACT
## (815 ILCS § 510, et seq.)

37. WHAM-O repeats and incorporates by reference herein its allegations contained in the above paragraphs of this Complaint.

38. Defendants have engaged in acts violating Illinois law including, but not limited to, passing off their counterfeit FRISBEE products as those of WHAM-O, causing a likelihood of confusion and/or misunderstanding as to the source of their goods, causing a likelihood of confusion and/or misunderstanding as to an affiliation, connection, or association with genuine FRISBEE products, representing that their products have WHAM-O's approval when they do not, and engaging in other conduct which creates a likelihood of confusion or misunderstanding among the public.

39. The foregoing Defendants' acts constitute a willful violation of the Illinois Uniform Deceptive Trade Practices Act, 815 ILCS § 510, et seq.

40. WHAM-O has no adequate remedy at law, and Defendants' conduct has caused Plaintiffs to suffer damage to its reputation and goodwill. Unless enjoined by the Court, WHAM-O will suffer future irreparable harm as a direct result of Defendants' unlawful activities.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiffs pray for judgment against Defendants as follows:

1) That Defendants, their affiliates, officers, agents, servants, employees, attorneys, confederates, and all persons acting for, with, by, through, under, or in active concert with them be temporarily preliminarily, and permanently enjoined and restrained from:

   a. using the FRISBEE trademarks or any reproductions, counterfeit copies, or colorable imitations thereof in any manner in connection with the distribution, marketing, advertising, offering for sale, or sale of any product that is not a genuine FRISBEE product or is not authorized by Plaintiffs to be sold in connection with the FRISBEE trademarks;

   b. passing off, inducing, or enabling others to sell or pass off any product as a genuine FRISBEE product or any other product produced by Plaintiffs that is not Plaintiffs' or not produced under the authorization, control, or supervision of Plaintiffs and approved by Plaintiffs for sale under the FRISBEE trademarks;

   c. committing any acts calculated to cause consumers to believe that Defendants' counterfeit FRISBEE products are those sold under the authorization, control, or supervision of Plaintiffs, or are sponsored by, approved by, or otherwise connected with Plaintiffs;

    d.  further infringing the FRISBEE trademarks and damaging Plaintiffs' goodwill;

    e.  otherwise competing unfairly with Plaintiffs in any manner;

    f.  shipping, delivering, holding for sale, transferring or otherwise moving, storing, distributing, returning, or otherwise disposing of, in any manner, products or inventory not manufactured by or for Plaintiffs, nor authorized by Plaintiffs to be sold or offered for sale, and which bear any Plaintiffs' trademarks, including the FRISBEE trademarks, or any reproductions, counterfeit copies, or colorable imitations thereof;

    g.  using, linking to, transferring, selling, exercising control over, or otherwise owning the Online Marketplace Accounts, the Defendant Domain Names, or any other domain name or online marketplace account that is being used to sell or is the means by which Defendants could continue to sell counterfeit FRISBEE products; and

    h.  operating and/or hosting websites at the Defendant Domain Names and any other domain names registered or operated by Defendants that are involved with the distribution, marketing, advertising, offering for sale, or sale of any product bearing the FRISBEE trademarks or any reproduction, counterfeit copy or colorable imitation thereof that is not a genuine FRISBEE product or not authorized by Plaintiffs to be sold in connection with the FRISBEE trademarks; and

2) That Defendants, within fourteen (14) days after service of judgment with notice of entry thereof upon them, be required to file with the Court and serve upon Plaintiffs a written report under oath setting forth in detail the manner and form in which Defendants have complied with paragraph 1, a through h, above;

3) Entry of an Order that, at Plaintiffs' choosing, the registrant of the Defendant Domain Names shall be changed from the current registrant to Plaintiffs, and that the domain name

registries for the Defendant Domain Names, including, but not limited to, VeriSign, Inc., Neustar, Inc., Afilias Limited, CentralNic, Nominet, and the Public Interest Registry, shall unlock and change the registrar of record for the Defendant Domain Names to a registrar of Plaintiffs' selection, and that the domain name registrars take any steps necessary to transfer the Defendant Domain Names to a registrar of Plaintiffs' selection; or that the same domain name registries shall disable the Defendant Domain Names and make them inactive and untransferable;

4) Entry of an Order that, upon Plaintiffs' request, those in privity with Defendants and those with notice of the injunction, including any online marketplaces such as WISH, iOffer and Alibaba Group Holding Ltd., Alipay.com Co., Ltd. and any related Alibaba entities (collectively, "Alibaba"), social media platforms, Facebook, YouTube, LinkedIn, Twitter, Internet search engines such as Google, Bing and Yahoo, web hosts for the Defendant Domain Names, and domain name registrars, shall:

a. disable and cease providing services for any accounts through which Defendants engage in the sale of counterfeit FRISBEE products using the FRISBEE trademarks, including any accounts associated with the Defendants listed on Schedule A;

b. disable and cease displaying any advertisements used by or associated with Defendants in connection with the sale of counterfeit FRISBEE products using the FRISBEE trademarks; and

c. take all steps necessary to prevent links to the Defendant Domain Names identified on Schedule A from displaying in search results, including, but not limited to, removing links to the Defendant Domain Names from any search index; and

5) That Defendants account for and pay to Plaintiffs all profits realized by Defendants by reason of Defendants' unlawful acts herein alleged, and that the amount of damages for

infringement of the FRISBEE trademarks be increased by a sum not exceeding three times the amount thereof as provided by 15 U.S.C. § 1117;

6) In the alternative, that Plaintiffs be awarded statutory damages pursuant to 15 U.S.C. § 1117(c)(2) of $2,000,000 for each and every use of the FRISBEE trademarks;

7) That Plaintiffs be awarded its reasonable attorneys' fees and costs; and

8) Award any and all other relief that this Court deems just and proper.

DATED: November 1, 2018                     Respectfully submitted,

*/s/ Keith A. Vogt*
Keith A. Vogt (Bar No. 6207971)
Keith Vogt, Ltd.
1033 South Blvd., Suite 200
Oak Park, Illinois 60302
Telephone: 708-203-4787
E-mail: keith@vogtip.com

***ATTORNEY FOR PLAINTIFFS***